UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

YEHEZKEL BERGER

                      Plaintiff,

-against-

SUBURBAN CREDIT CORP.,

                      Defendant.
----------------------------------X

**MEMORANDUM AND ORDER**

04 CV 4006 (CLP)

On September 15, 2004, plaintiff Yehezkel Berger ("Berger") commenced this class action, on behalf of himself and others similarly situated, against the defendant, Suburban Credit Corporation ("Suburban"), a debt collection agency, seeking damages and attorney's fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

Presently before the Court is plaintiff's motion for summary judgment, filed December 13, 2005.[1] For the reasons set forth below, the Court grants plaintiff's motion.

## FACTUAL BACKGROUND

A. <u>The Genesis of the Debt</u>

The material facts underlying this action appear to be largely undisputed.[2] At

---

[1] On December 9, 2004, the parties consented to have the case referred to the undersigned for all purposes.

[2] In connection with the motion, plaintiff's counsel has submitted a Rule 56.1 Statement of Material Facts that contains two paragraphs detailing defendant's collection practices with respect to various categories of debts. Defendant has not submitted a response to Plaintiff's 56.1 Statement in conformity with the format prescribed by Local Rule 56.1 (see Defendant's Reply Memorandum of Law, dated January 9, 2006 ("Def.'s Reply Mem.")), which requires the non-movant's counterstatement of material facts to be formatted in correspondingly numbered

1

some point, not specified in the record before this Court,[3] defendant Suburban, a Virginia corporation engaged in the business of collecting consumer debts, attempted to collect a $150.00 debt allegedly owed to NYU Department of Radiology, which was incurred by plaintiff Berger for "personal purposes." (Compl. ¶¶ 4, 5, 10; Ex.). In a letter bearing the date July 26, 2004, and entitled "Second Reminder," defendant informed plaintiff that there was a total balance of $150.00 owed on two accounts. (Compl. ¶ 10; Ex.). The letter also provided plaintiff with certain contact and payment information. (Id.)

Plaintiff complains that one sentence in the letter violates Sections 1692e(5) and 1692e(10) of the FDCPA in that it constitutes "deceptive and falsely threatening practices." (Id. ¶¶ 11, 12). Specifically, the collection letter contains the following language:

> SECOND REMINDER
> We have tried to contact you regarding your delinquent account with our client. Do you intend to pay this obligation? If so send check or money order. If we do not receive the balance of payment by return mail, *we shall take whatever steps necessary to pursue collection*. . . .

---

paragraphs. See Local Civil Rule 56.1. Since plaintiff advances only two factual assertions in the Statement of Material Facts, which appear to be supported by defendant's responses to interrogatories and requests to admit (see Plaintiff's 56.1 Statement of Material Facts ("Pl.'s 56.1 Stmnt") ¶¶ 1, 2; Defendant's Response to Request for Admissions ("Def.'s Admissions"); Defendant's Response to First Interrogatories ("Def.'s Responses") ¶¶ 3, 4, 5), and defendant has not submitted a responsive statement challenging those facts, the Court has considered the plaintiff's Statement of Material Facts as undisputed.

[3] At least one other collection letter was sent in this case prior to the letter which is the subject of the Complaint and which contains a reference to the letter as a "Second Reminder." See Exhibit ("Ex.") to plaintiff's Complaint dated August 11, 2004 ("Compl."); Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment, dated December 13, 2005 ("Pl.'s Mem.") at 1. Plaintiff does not challenge any language in the first letter (Pl.'s Mem. at 1), nor does it appear that there is any claim that the plaintiff was not provided with the requisite validation notice defined in subsection g of Section 1692 of the FDCPA. See 15 U.S.C. § 1692g(a); Compl. ¶¶ 9, 10, 11, 12.

2

(Compl., Ex.) (emphasis added). Plaintiff alleges that the italicized language is not only ambiguous in that it leaves it to the consumer to determine what the language means, but also that the language is false and misleading because the phrase "whatever steps necessary" could include "the filing of a lawsuit, post-judgment collection. . ." or "having a collector appear at the debtor's home to attempt to convince the debtor or bully the debtor into paying." (Pl.'s Mem. at 1-2). Plaintiff argues that the defendant's practice in attempting to collect debts for various dollar amounts under $1,000 is to send an initial notice, which may then be followed by additional demands for payment and possible telephone contact. (Id. at 3; Pl.'s 56.1 Stmnt ¶ 1). Where, as here, the debt is in the range of $150.00, defendant's practice is to return the debt to the creditor if its efforts at collection are unsuccessful. (Pl.'s Mem. at 3; Pl.'s 56.1 Stmnt ¶ 2). Plaintiff argues that since defendant's letter threatens to take "whatever steps necessary" to collect the debt, it is misleading and deceptive because, in practice, defendant does nothing more than send out notices and make telephone calls. (Pl.'s Mem. at 3-4).

Defendant concedes that violations of the FDCPA have been found where the collection letter threatens legal action that the collector did not intend to take. (See Def.'s Mem. at 10).[4] However, defendant contends that in this case, the language of the collection letter is "not susceptible to more than one reasonable interpretation. . .[and] contains no contradictory or threatening language, which could be subject to misinterpretation by the plaintiff. There are no threats of legal action or statements that the matter was referred to a lawyer for litigation." (Id. at 10-11). Defendant does not address plaintiff's argument that the language of the letter can be

---

[4] Citations to "Def.'s Mem." refer to the Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment Pursuant to F.R.C.P. 56, dated January 9, 2006.

read to suggest that legal action was a possible consequence of failure to pay when, in practice, the debt collector never takes such action for a debt of this size. Instead, defendant merely contends that plaintiff has failed to satisfy the burden of articulating "any facts" that would support the claim. (Id. at 9).

## DISCUSSION

A. Summary Judgment Standards

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990) (quoting Fed. R. Civ. P. 56(c)). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. College at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985), the court should not grant summary judgment unless it is clear that all of the elements have been satisfied. See Auletta v. Tully, 576 F. Supp. 191, 195 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858

4

(S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original).

In reversing a grant of summary judgment, the Second Circuit noted that the "[t]rial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material facts to be tried, not to deciding them." Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

A movant satisfies its burden to show prima facie entitlement to summary judgment by showing that a claimant has produced no evidence or insufficient evidence concerning a necessary element of the claim. "Because the civil litigation burden of persuasion [] rests with the claimant, the claimant must have at least some sufficiently probative evidence supporting each element of a claim [] in order to prevail on the claim. If proof is absent or insufficient regarding any necessary element of a claim, the claimant can not [sic] win at trial and trial is therefore unnecessary." James Wm. Moore, 11 Moore's Fed. Practice, § 56.11[1][b]; see also Zuckerbraun v. General Dynamics Corp., 935 F.2d 544, 547 (2d Cir. 1991).

Since discovery in the case has been completed and there are no material issues of fact in dispute, this case is ripe for summary judgment. Indeed, the Second Circuit has indicated that the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law because the standard is an objective one. See Schweizer v.

Trans Union Corp., 136 F.3d 233, 237-38 (2d Cir. 1998); Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62-63 (2d Cir. 1993).

B. The Fair Debt Collection Practices Act

The FDCPA was enacted in order to "eliminate abusive debt collection practices by debt collectors...." 15 U.S.C. § 1692. See Vega v. Credit Bureau Enters., No. 02 CV 1550, 2005 WL 711657, at *6 (E.D.N.Y. Mar. 29, 2005). Among other things, the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. See Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir. 1993). Subsection e of the Act contains a non-exhaustive list of prohibited activities which constitute false, misleading, or deceptive practices, including Subsection e(5), which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and Subsection e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(5), (10). "Deceptiveness," within the meaning of Section 1692e, includes ambiguity. Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996).

Where the letter or notice contains language beyond that which is statutorily required by the notice requirements detailed in 15 U.S.C. § 1692g, the letter may run afoul of Section 1692e if there is more than one reasonable interpretation to the language. See Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998) (noting, "[w]hen a notice contains language that overshadows or contradicts other language informing a consumer of her rights, it violates the Act") (citation omitted); see also Russell v. Equifax A.R.S., 74 F.3d at 34 (holding that if the "least sophisticated consumer reads [a communication with conflicting statements on its front

6

and back] she could readily believe – despite the inclusion of the validation notice – that were she to take any course other than payment to [the debt collection agency] within 10 days, it would permanently affect her credit record [as written on the front of the collection notice]"). A collection notice is deceptive for the purposes of the FDCPA if it is "reasonably susceptible to an inaccurate reading. . . ." Russell v. Equifax A.R.S., 74 F.3d at 35; see also Clomon v. Jackson, 988 F.2d at 1319.

In assessing the language of debt collection letters to determine if they violate the FDCPA, courts in the Second Circuit apply an objective standard derived from the perspective of the "least sophisticated consumer." McStay v. I.C. Sys., Inc., 308 F.3d at 190; see also Russell v. Equifax A.R.S., 74 F.3d at 34; Clomon v. Jackson, 988 F.2d at 1318-19; Lerner v. Forster, 240 F. Supp. 2d 233, 237 (E.D.N.Y. 2003). A person without the astuteness of a "Philadelphia lawyer" or "even the sophistication of the average, everyday, common consumer" should be able to understand the language of the notice he or she receives. Russell v. Equifax A.R.S., 74 F.3d at 34.

Although the least sophisticated consumer standard is intended to protect "the naive and the credulous" from abuse, courts applying the standard have "carefully preserved the concept of reasonableness." Clomon v. Jackson, 988 F.2d at 1319. "[E]ven the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id.; see also McStay v. I.C. Sys., Inc., 308 F.3d at 191 (noting that "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back").

Thus, in evaluating the letter here, the Court must establish whether the least sophisticated consumer could reasonably misinterpret the challenged language or interpret the language to mean that defendant was going to initiate action which it never actually intended, or was not legally sanctioned, to take.

C. Analysis

Section 1692e of the FDCPA contains a non-exhaustive list of collection practices that violate the prohibition against false, misleading, and deceptive representations. See 15 U.S.C. § 1692e. Among the practices explicitly prohibited by the section is a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). See Bentley v. Great Lakes Collection Bureau, 6 F.3d at 63. In determining whether language that can be construed as threatening legal action violates Section 1692e(5), courts look to the facts and circumstances of the case and consider a number of factors.

First, courts consider whether the threat to bring suit to collect the debt is one made by the debt collector himself, or whether the language merely suggests that the debt collector's client may consider pursuing legal action in the event of nonpayment. See, e.g., Knowles v. Credit Bureau of Rochester, No. 91 CV 14, 1992 WL 131107, at *1-3 (W.D.N.Y. May 28, 1992). In Knowles, the court found that there was no violation of the FDCPA because the collection letter's statement that "'[f]ailure to pay will leave our client no choice but to consider legal action'" did not constitute a threat by a debt collector. See id.; see also Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 178 (W.D.N.Y. 1988) (finding no statutory violation where

8

the language of the letter stated, "'you leave us no choice but to advise your creditor that you have ignored our efforts, and that legal action may be necessary in order to collect this bil[l]'").[5]

Courts also consider whether the language in the letters explicitly threatens that legal action will be taken, or whether it simply describes available alternatives which include possible legal action. See, e.g., Madonna v. Academy Collection Servs., Inc., No. 95 CV 00875, 1997 WL 530101, at *6-9 (D. Conn. Aug. 12, 1997). In Madonna, the plaintiff challenged language in three collection letters received from the defendant which plaintiff alleged violated the prohibition in Section 1692e(5) and e(10) by threatening an action not intended to be taken. See id. at *6. Specifically, one of the letters stated that if the debtor refused to cooperate in the collection process, the client "'may choose to pursue legal action to collect this debt.'" Id. at *1. The final letter reiterated that "'[o]ur client may choose to pursue legal action.'" Id. at *2. In distinguishing the language in the challenged letters from that found violative of the FDCPA in other cases, see, e.g., Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, the court in the Madonna action held that the language did "not suggest that legal action will be taken, but only refer[ed] to remedies available to the creditor if such action is pursued." Id. at *8-9. The court also explicitly rejected the proposition suggested by plaintiff that "no mention of legal action can be made unless such action has already been decided upon." Id. at *8.[6]

---

[5]The Court notes that the Riveria court applied an "unsophisticated person" analysis in lieu of the now widely accepted "least sophisticated person" inquiry in its Section 1692(e)(10) discussion, and rejected the application of either test in its Section 1692(e)(5) analysis. See Riveria v. MAB Collections, Inc., 682 F. Supp. at 178-79. This does not, however, affect the relevance of the proposition cited.

[6]In Madonna, the evidence demonstrated that out of 153,931 accounts received by defendant Academy from this client, authorization to sue had been given by the client regarding only 29 accounts. Id. at *2.

9

However, where the debt collector is not authorized by its client to pursue legal action, threats of legal action have been found to be in violation of Section 1692(e)(5). See, e.g., Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, at 62-63. In Bentley, the defendant sent a dunning letter informing the debtor that the creditor in the case, Citicorp Retail Services, Inc. ("CRSI"), "'have instructed us to proceed with whatever legal means is necessary to enforce collection.'" Id. at 61. In reversing the district court's conclusion that this language was not misleading or deceptive for FDCPA purposes, the Second Circuit noted that the contract between CRSI and the collection agency explicitly provided that prior written authorization was required from CRSI before the collection agency could commence litigation. Id. Since no such authorization had been given to the collection agency concerning the plaintiff, the court concluded that the statement in the letter not only falsely implied that legal action had been authorized, but that the "'least sophisticated consumer'" could conclude that legal action was "likely and imminent." Id. at 62. Therefore, the statements were "'false, deceptive, [and] misleading'" in violation of the FDCPA as they threatened action "'not intended to be taken.'" Id. The court further found that language in a second collection notice that referred to legal remedies available to enforce any judgment entered against the plaintiff also violated the FDCPA's prohibition on threatening action "'not intended to be taken.'" Id. at 63. The court explained that "the likelihood of such proceedings on a claim for $483.43 was almost nonexistent." Id. But cf., Spira v. Ashwood Fin., Inc., 358 F. Supp. 2d 150, 160 (E.D.N.Y. 2005) (citing Goldberg v. Transworld Sys., Inc., 164 F.3d 617 (2d Cir. 1998) (unpub. op.) (noting that "[t]he commencement of a lawsuit regarding a $16[.00] debt, while unlikely, is not – as this demonstrates – unheard of")).

Finally, the courts look to the defendant's intent in determining whether a threat to take certain action violates the FDCPA's prohibitions. See, e.g., Spira v. Ashwood Fin., Inc., 358 F. Supp. 2d at 160-61. In Spira, this Court found that the language "'[i]t is our intent to pursue collection of this debt through every means available'" did not violate the FDCPA because the plaintiff had failed to establish that it "was a threat that [defendant] could not make." Id. at 160. To the contrary, the court noted that "at the time of the drafting of the. . .letter, [defendant] had not firmly decided what steps, if any, it would take to collect the unpaid debt but was considering the full range of options. . . ." Id. The court described the various valid options that are available to collect a debt, including "send[ing] further written correspondence. . .placi[ing] telephone calls. . .forward[ing] claims to attorneys for either litigation or demand[ing] letters to be sent from the attorney's office. . . ." Id. Since these were options available to the defendant and because there was no evidence that they were threats of actions defendant could not take, the court concluded that the statement did not violate either Section 1692e(5) or 1692e(10). Id.

With a similar focus on the debt collector's intent, the Court in Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22 (2d Cir. 1989), held that the FDCPA had been violated where the debt collector testified that it would normally take no further action as alleged in the collection notice. See id. at 25-26. In that case, the collection notice stated that "'this item has already been referred for collection action,'" and that "'[the debt collector] will. . .take action as necessary and appropriate to secure payment in full.'" Id. at 25. Additionally, the collection notice demanded that plaintiff "'[p]ay this amount now if action is to be stopped.'" Id. Although the Court noted that the language was vague, it nonetheless held that the FDCPA had been violated because the "clear import" of the language was that legal action would be initiated

when, in fact, the only prospective action contemplated to be taken for a debt in the amount at issue in the case was to "'try to contact [the debtor] by phone.'" See id. at 25-26.

The language at issue here is very similar to the language used in the Spira collection letters. While the language in this case – "we shall take whatever steps necessary" to collect the debt – could be seen as merely restating the fact that there were various options available to further pursue collection of the debt, the language necessarily implies that the commencement of legal action is a possible step. (Compl., Ex.) Moreover, unlike the language in Riveria and Knowles, which referred to potential legal action to be taken by the client, see Knowles v. Credit Bureau of Rochester, 1992 WL 131107, at *2; see also Riveria v. MAB Collections, Inc., 682 F. Supp. at 178 (holding that there had been no FDCPA violation where the collection letter merely stated that the debt collector would advise the creditor that "'legal action may be necessary'"), the language in this case specifically refers to action to be taken by the debt collector who is sending the letter: "we shall take whatever steps necessary." (Compl. ¶ 11; Ex.) (emphasis added). Thus, the question raised by this motion is if, on the facts before this Court, there is a dispute as to whether the language in question implied action that defendant was not authorized to make or never intended to pursue.

As to the issue of authorization, there is no evidence before this Court which suggests that defendant was in fact authorized by its client to take "whatever steps necessary" to collect this debt. The only evidence before this Court is plaintiff's assertion in his Rule 56.1 Statement that for debts of approximately this size, defendant's practice is to return the debt to the creditor if collection efforts are unsuccessful. (See Pl.'s 56.1 Stmnt ¶ 2). The defendant has not disputed this assertion, nor has defendant presented any evidence to contradict plaintiff's claim that for debts of this size, defendant's practice is merely to send notices and possibly phone the debtor in

12

its efforts to collect the debt. Unlike the defendant in Spira, the defendant here has not presented evidence suggesting that it had not yet decided whether to pursue legal action. Nor has the defendant presented any facts to suggest that, despite its stated practice, it has pursued legal action to collect debts of this kind at times in the past. Indeed, there has been no evidence presented as to the terms of the contract between defendant and its creditor which would demonstrate whether defendant was authorized to commence legal action or had ever used litigation to collect a debt of this size.

Accordingly, in the absence of any evidence to suggest that defendant intended to pursue "any steps necessary" to collect this debt or that it was even authorized to do so, the Court finds that the language here violates 15 U.S.C. § 1692e(5) by threatening action that defendant never intended to take. Plaintiff's motion for summary judgment is hereby granted.

**SO ORDERED.**

Dated: Brooklyn, New York
September 5, 2006

_____
Cheryl L. Pollak
United States Magistrate Judge